IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN  DIVISION

UNITED STATES OF AMERICA )
 )
V. ) CASE NO: 2:06–cr-137-MHT
 )
ORLANDO REYNA-JIMENEZ )

## MOTION TO SUPPRESS AND CITATIONS OF AUTHORITY

The Defendant, Orlando Reyna-Jiminez, by and through undersigned counsel, Christine Freeman, and pursuant to the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, moves this Court for an Order suppressing all evidence and all statements seized as a result of the following described illegal stop, search and/or seizure on May 26, 2006, on Interstate I-65 near mile marker 107, in the Middle District of Alabama.

This evidence to be suppressed includes, but is not limited to,: (a) any and all physical evidence seized from the 2005 Nissan Sentra (bearing a license tag from Mexico); (b) any and all items seized from Mr. Reyna-Jiminez; ( c) any and all statements made by Mr. Reyna-Jiminez during and after any stop, search and/or seizure of the Nissan and/or after Mr. Reyna-Jiminez' arrest; and (d) any and all evidence obtained as a result or "fruit" of any such search,  seizure, and/or statements.

## Facts

At an evidentiary hearing, the following facts would be established:

1. Mr. Reyna-Jiminez, is a 23 year old male, born in Duritzio, Michoacan, Mexico.  Mr. Reyna-Jiminez has minimal education and, on information and belief, is not

able to read with comprehension.

2.    On the morning of Friday, May 26, 2006,  the Nissan being driven by Mr. Reyna-Jiminez was pulled over on I-65 and stopped  by Alabama State Trooper Chris Faulk.

3.    The vehicle was in good condition and had no visible safety code violation or mechanical defects.  The vehicle was neither speeding nor driving erratically at the time of the stop.[1]   Additionally, there was no sign of contraband in plain view within the vehicle.

4.    On information and belief, the location on I-65 at which Mr. Reyna-Jiminez was stopped has been the site of numerous traffic stops by Alabama state troopers, due to certain characteristics of the site and not due to any driving difficulties of the drivers stopped.

5.    In response to inquiry from the trooper, Mr. Reyna-Jiminez got out of the car, came to the back of the vehicle, and discussed why the trooper alleged that he had stopped the car.

6.    The trooper issued a warning to Mr. Reyna-Jiminez for "following too close" and a citation for "driving while revoked." On information and belief, this alleged basis for stopping vehicles has been repeatedly and disparately used by Alabama state troopers against Hispanic drivers.

7.    After issuing the traffic citation and warning, the Trooper further detained Mr. Reyna-Jiminez.

8.    The further detention of Mr. Reyna-Jiminez resulted in obtaining the "consent"

---

[1]Although the Alabama State Trooper report regarding this stop indicates that Mr. Reyna-Jiminez was stopped because his vehicle for "following too close."

2

of Mr. Reyna-Jiminez to a search of the vehicle, which in turn "revealed three false compartments."

9.    Apparently based solely on the discovery of "false compartments," and not their contents, Mr. Reyna-Jiminez and his vehicle were taken to the Alabama State Trooper Post in Evergreen, Alabama.

10.    At the trooper post, a search of the Nissan resulted in the discovery of 22 bundles of cash.

11.    While Mr. Reyna-Jiminez was detained at the trooper post, the officers concluded that Mr. Reyna-Jiminez "was not in possession of any immigration documents allowing him to enter, reside or work in the United States legally."  On information and belief, this conclusion was based in part on interrogation of Mr. Reyna-Jiminez and was at least partially incorrect; the requirements for temporary entry are not the same as requirements for residence or employment.

12.    The troopers contacted an agent of the Bureau of Immigration and Customs Enforcement ("BICE"), who searched records and concluded that Mr. Reyna-Jiminez had been previously deported three times and had one felony conviction, and also concluded that the Nissan had entered the United States through Brownsville, Texas on May 10, 2006.

13.    The BICE agent took Mr. Reyna-Jiminez to the Alabama Department of Public Safety office in Montgomery, Alabama, "for further questioning," and there fingerprinted and interrogated Mr. Reyna-Jiminez, obtaining inculpatory statements.

14.    Although Mr. Reyna-Jiminez was arrested on the morning of Friday, May 26, 2006, and was detained in the Montgomery City Jail on that date, a criminal complaint was not filed in this matter until Tuesday, May 30, 2006, and Mr. Reyna-Jiminez was not brought before the U.S. District Court until May 30, 2006.[2]

15.    Although aware of Mr. Reyna-Jiminez' Mexican citizenship, the authorities detaining him failed to notify the Mexican consulate of his arrest and failed to notify Mr. Reyna-Jiminez of his right of access to the Mexican consulate, in violation of Article 36 of the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77.

16.    The information and items obtained as a result of these events are  due to be suppressed because:

a.    The initial traffic stop was without probable cause, in violation of the Fourth Amendment right to be free from unreasonable seizures and searches;

b.    The initial traffic stop was pretextual, in violation of the Fifth and Thirteenth Amendments to the U.S. Constitution.

c.    The continued detention of Mr. Reyna-Jiminez was without probable cause, in violation of the Fourth Amendment.

d.    The search of the Nissan was conducted without warrant, without probable cause and without voluntary and knowing consent of Mr. Reyna-Jiminez, in violation of the Fourth Amendment.

---

[2]While Monday, May 29, 2006 was a federal holiday, defendant contends he could have and should have been brought before the Court on Friday, May 26.

4

e.      The interrogations of Mr .Reyna-Jiminez violated his rights under the Fifth and Sixth Amendments to be free of coercive interrogation.

f.      The interrogations of Mr .Reyna-Jiminez did not result from a knowing or voluntary waiver of his rights to silence and to counsel,  under the Fifth and Sixth Amendments.

g.      Article 36 of the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, requires that foreign nationals be informed of their right to contact their consulate upon arrest.

## Law

The Fourth Amendment protects individuals from unreasonable searches and seizures. Const. Amend IV.   "A traffic stop is a seizure within the meaning of the Fourth Amendment." *U.S. v. Purcell*, 2236 F. 3rd 1274 (11th Cir. 2001).  The legality of traffic stops is analyzed under the standards articulated in *Terry v. Ohio*, 392, U.S. 1, 88 S.Ct. 1868 (1968)." *Id.* at 1277 (citations omitted).

In *United States v. Pruitt*, 174 F. 3rd 1215 (11th Cir. 1999), the Eleventh Circuit addressed the implication of the Fourth Amendment in a routine traffic stop and the application of the *Terry* standard.   That standard requires that there be more than an "inchoate hunch" as the basis for the traffic stop.

In the present case, the trooper alleged that he initiated the traffic stop based on the vehicle "following too close."   Based on all of the circumstances of this and other traffic

stops by the Alabama State Troopers, the stop appears to be pretextual.

The Fifth, Thirteenth and Fourteenth Amendment rights to due process and to equal protection and prohibition of slavery prohibit selective enforcement of any laws based on the race of an individual or ethnic profiling. *Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769 (1996); see also "A Thirteenth Amendment Framework for Combating Racial Profiling," 39 Harv.C.R.-C.L. L. Rev. 17 (Winter 2004); *Pruitt, supra*, 174 F.3d at 1221 ("being Mexican, having few pieces of luggage, being visibly nervous or shaken during a confrontation with a state trooper, or traveling on the interstate with Texas license plates (not yet a crime in Alabama), do not provide a minimal, particularized basis for a conclusion of reasonable suspicion on the part of [the officer]." *See also, U.S. v. Arreola-Delgado*, 137 F. Supp. 2d 1240 (2001).

In addition, the Fourth Amendment prohibits continued detention of a vehicle and its occupants, once the traffic purpose of the stop has been completed, unless the traffic officer can point to `specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'" *Pruitt,* at 1219 (citations omitted); *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990).

In *Pruitt*, the Court held that the detention and subsequent search of the defendants vehicle violated their Fourth Amendment rights. Specifically, the Court found that the questioning during the traffic stop for an alleged speeding violation should have been limited to questions regarding the driver's "license, registration and insurance papers." *Id.* at 1220.

The Court found that there was no basis for a suspicion of criminal activity and therefore, additional questioning was irrelevant and a violation of *Terry*. *Id.*

Thus, in this case, even if the trooper had a valid basis for the initial traffic stop, there was no basis to prolong the stop after the warning citation had been issued.

A defendant whose physical location is controlled by the police is in custody. *U.S. v. Grant*, 920 F.2d 376, 382 (6ᵗʰ Cir. 1991). Where a defendant has been interrogated while in custody, the prosecution may not use statements stemming from that interrogation "unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612 (1966). The prosecutor carries the burden to prove by a preponderance of the evidence that a valid waiver was obtained. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). The government must show (1) "that the waiver was made in full awareness of the nature of the right being waived and the consequences of waiving," and (2) "that the waiver was voluntary in the sense that it was a product of free and deliberate choice rather than intimidation, coercion, or deception" based upon the totality of the circumstances. *United States v. Hernandez*, 93 F.3d 1493, 1501 (10th Cir.1996) (citing *Colorado v. Connelly*, 479 U.S. 157, 169- 70 (1986)).

In addition, the government may not use statements obtained involuntarily from a defendant. Physically "coercive factors, such as physical abuse or threats of physical violence, need not be present to support a determination of involuntariness." *Wainwright v. LaSalle*, 414 F.2d 1235, 1239 (5ᵗʰ Cir. 1969). In analyzing whether a defendant's will was

overborne by the circumstances surrounding the giving of a confession, this Court must review the totality of the circumstances of the interrogation. *Dickerson v. United States*, 530 U.S. 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (internal quotations and citation omitted). 18 U.S.C. § 3501(b) requires that the following factors be considered:

> (1) [T]he time elapsing between arrest and arraignment of the defendant making the confession, ... (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

18 U.S.C. § 3501(b).

"(A) driver using a vehicle with the permission of an absent owner has been found to possess a reasonable expectation of privacy therein." *U.S. v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998). Determination of whether or not an alleged consent to search of a vehicle was voluntary "is a finding of fact, that will not be disturbed on appeal absent clear error." *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir.2001). "In assessing voluntariness, the inquiry is factual and depends on the totality of the circumstances.... In evaluating the totality of the circumstances underlying consent, the court should look at several indicators, including the presence of coercive police procedures, the extent of the defendant's cooperation with the officer, the defendant's awareness of his right to refuse consent, the defendant's education and intelligence, and the defendant's belief that no incriminating

evidence will be found." *Id*.;  *U.S. v. Simms*, 385 F.3d 1347, 1355 (11th Cir. 2004).

In the case of a foreign national, any voluntariness inquiry should also include assessment of the following factors: (1) whether the defendant signed a written waiver; (2) whether he was read his rights in his native language; (3) whether he appeared to understand those rights; (4) whether he had the assistance of a translator; (5) whether his rights were explained painstakingly; and, (6) whether he had experience with the American criminal justice system. *United States v. Garibay*, 143 F.3d 534, 536 - 538 (9th Cir.1998).  Where a defendant was given incorrect or misleading information about the effect of a waiver, or was given incomplete information about the charges against him, the waiver is not adequate to permit use of the resulting statements. *U.S. v. Martinez*, 486 F.2d 15, 19 (5th Cir. 1973).

Further, Article 36 of the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, requires that foreign nationals be informed of their right to contact their consulate upon arrest.   Where, as in this case, such information was not provided, there is further support for a finding that the defendant did not voluntarily waive his rights to silence or to counsel.

In this case, the evidence will show that Mr. Reyna-Jiminez was not provided adequate explanation of his rights to silence or counsel and did not understand those rights.

**WHEREFORE**, the Mr. Reyna-Jiminez prays that all fruits of the illegal seizure, search and interrogations conducted May 26, 2006 be suppressed.

Respectfully submitted,

9

s/ Christine A. Freeman
**CHRISTINE A. FREEMAN**
Counsel for Mr. Reyna-Jiminez
FEDERAL DEFENDERS
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: Christine_Freeman@fd.org
TN Bar Code: 11892

**FEDERAL DEFENDERS**
**MIDDLE DISTRICT OF ALABAMA**
201 Monroe Street, Suite 1960
Montgomery, Alabama   36104
TEL:  (334) 834-2099
FAX:  (334) 834-0353

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Kent Brunson, Esquire
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, Alabama 36104

s/ Christine A. Freeman
**CHRISTINE A. FREEMAN**
**FEDERAL DEFENDERS**
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: Christine_Freeman@fd.org
TN Bar Code: 11892